Harper v. Perry.

---

## HARPER v. PERRY.

| 28 | 57 |
| 89 | 498 |

| 28 | 57 |
| 104 | 512 |

| 28 | 57 |
| 126 | 606 |

| 28 | 57 |
| 133 | 312 |

| 28 | 57 |
| 138 | 525 |

1. Attorney and client: PURCHASE OF CLIENT'S PROPERTY. While the relation of attorney and client exists the attorney is not permitted to take advantage of his client's affairs or speculate upon his interests. A purchase of property by an attorney, against the interest of the client, sold in the course of litigation, in which the attorney was retained, will be held void, or the attorney will be treated as the trustee of the client.

2. Notice: POSSESSION. One who purchases land in the actual possession of a third party will be held charged with notice of the latter's equities.

3. Conveyance: COVENANTS OF WARRANTY. Where a purchaser of real estate has the conveyance thereof executed to a third party, from whom he borrowed the purchase-money, and as a security therefor, the purchaser will be treated as holding the equitable title, and entitled to avail himself of the covenants contained in the deed in case of a breach thereof.

4. ―― CONSIDERATION: ACTUAL AMOUNT MAY BE SHOWN. The consideration mentioned in a deed is only *prima facie* evidence of the amount paid; and, in an action upon the covenant of warranty, it is competent to show that the true consideration was greater than the amount named in the conveyance.

*Appeal from Jones District Court.*

MONDAY, OCTOBER 11.

THIS originally was an action at law to recover the possession of certain lands. Defendant's answer sets up an equitable defense, and is in the nature of a cross-petition, praying for affirmative relief against plaintiff and I. M. Preston and J. H. Preston, who were made parties thereto. The cause was transferred to the Chancery docket. Upon a hearing on the merits, defendant's cross-petition was dismissed, and judgment rendered in favor of plaintiff for the recovery of the land. Defendant appeals.

*Thomas Corbett* and *J. L. Shehan* for the appellant.

*I. M. Preston* for the appellee.

BECK, J. — I. A discussion of the evidence, and a statement of the reasons upon which our conclusion as to the facts are based, would be of no benefit to the parties, and occupy many pages of the reports without profit to any one. We will therefore content ourselves with stating such conclusions, drawn from a careful consideration of the record.

1. I. M. Preston sold to defendant Perry, December 18, 1863, a part of the lands in controversy for $500. Within a week after, Perry paid $200 of the price agreed upon for the land, and received from Preston a bond for a deed when the balance of the purchase-money should be paid. Some time during the following year, the precise time not appearing, Perry bargained with Preston for the rest of the land, agreeing to pay $100 therefor.

When these lands were bargained to Perry a large amount of taxes was due thereon. Those due on the tract

first purchased, Preston was to pay; but it appears that Perry paid therefor, November 26, 1864, the sum of $81.67. We gather from the evidence that Perry was to pay the taxes on the other tract.

2. On the 26th of December, 1865, Preston conveyed the lands to Frances Evans by deed of warranty, she having secured from Perry an assignment of the bond, and having paid the balance of the purchase-money. An arrangement was made between Perry and Mrs. Evans, whereby she loaned him the money to pay for the lands, and the deed from Preston was made to her to secure the sum so loaned. Perry remains in possession of the land. The deed of Preston excepts from the covenant of warranty " all claims for taxes " upon the land, and expresses the consideration for the land to be $500.

3. In May, 1865, one Peters brought suit against I. M. Preston, Perry and others to subject the said land, with another tract, to sale under a deed of trust executed by Preston's grantor to secure a certain sum specified therein. October 31, 1866, a decree was rendered in this suit directing all of the land described in the deed of trust to be sold for the payment of the sum of $760.59, and interest at ten per cent per annum from November 26, 1858.

4. The suit was defended by Preston and Perry. I. M. Preston and J. H. Preston, being associated together as copartners in the practice of the law, appeared during the progress of the action as the attorneys of Perry. J. H. Preston is the son of I. M. Preston. Perry relied upon these attorneys to protect his interest involved in said suit, and looked to I. M. Preston to pay off the incumbrance.

5. Perry made valuable improvements upon the land and paid the taxes after he went into possession.

6. The land was sold upon the Peters decree with the other lands embraced therein. Perry's lands were first sold. J. H. Preston was the purchaser at the sheriff's sale, and became such to protect the interest of his father and partner in business, I. M. Preston. Being the attorney of Perry, he is chargeable with full notice of all his rights and equities.

7. J. H. Preston sold and conveyed the lands to Harper (plaintiff) for $2,800. Harper executed notes for the purchase-money, which are unpaid and yet in the possession of J. H. Preston. Perry being in possession of the land, Harper is chargeable with notice of his rights and equities.

8. I. M. Preston, J. H. Preston and Harper, in their transactions in regard to the land, have a common understanding and mutual agreement, whereby they design and endeavor to deprive Perry of the land and transfer the title to Harper, J. H. Preston being benefited thereby to the extent of near $1,000, and I. M. Preston remaining only liable on his warranty in the deed to Mrs. Evans, his liability being much less than the profits of J. H. Preston in the transaction.

II. The rules of law governing the transactions of an attorney with his client are most strict, and operate to 1. ATTORNEY AND CLIENT: purchase of client's property. protect the client from any advantage that may be possessed by the attorney on account of superior knowledge or confidence reposed in him by the client. What the law does not consider unfair dealing between other parties, where no fiduciary relation exists, will frequently not be sustained as between attorney and client. While the relation exists, an attorney is not permitted to take advantage of the client's affairs, against his interest, to make money. The hardship of the doctrine, in its application to particular cases, is not so much regarded as the public mischief which

Harper v. Perry.

would grow out of lax rules permitting the attorney to take advantage of his position and knowledge and the confidence of his client, in order to make advantageous transactions for himself. No rule, in its application, has a more beneficial effect upon the pecuniary interests, or more effectually promotes the dignity, of the legal profession. It is the source of the utmost confidence in the attorney, and secures to the client services meriting the most generous rewards. Its strict enforcement is necessary for the proper protection of the client. And courts will not refrain from its application because the wrong to the client may not be fully apparent in extent, nor the influence under which it was wrought entirely understood.

The application of this rule forbids the attorney to purchase, against the interest of his client, property sold in the course of litigation, in which he is retained, and such sales will be held void, or the attorney will be held as the trustee of his client, and required to account as such. *Stockton* v. *Ford,* 11 How. 246 ; *Henry* v. *Ramain,* 25 Penn. St. 354 ; 1 Story's Eq. § 311 ; *Starr et al.* v. *Vanderhuyden,* 9 Johns. 253 ; *Merritt* v. *Lambert,* 10 Paige, 358 ; *Howell et al.* v. *Ransom et al.,* 11 id. 538 ; *Howell* v. *Baker,* 4 Johns. Ch. 120 ; *Armstrong* v. *Huston's Heirs,* 8 Ohio, 554 ; *Wade* v. *Pettibone,* 11 id. 57.

The relation of warrantor, sustained by I. M. Preston toward Perry, imposed upon him in conscience an additional obligation to protect Perry's interest. The relation being fully known to J. H. Preston — his knowledge being through his position as attorney — imposed upon him the like additional duty. We are warranted in the conclusion, after a careful consideration of the evidence, that these attorneys, after judgment in the Peters case, aimed only at the protection of I. M. Preston, without regard to the interests of Perry.

Harper v. Perry.

Upon the day of the sale of the lands they acted upon the supposition that the relation to Perry as his attorneys had ceased; but, in our opinion, the relation still existed.

It seems that Perry, thinking it necessary, procured the services of another attorney at the sale; but there is no evidence of the discharge of the Prestons. Perry, in his deposition, uses the expression that they did not act for him, or words to that effect. He is not to be understood that there was a dissolution of the relation of client and attorney, but simply that they were not acting for his interest. Neither of the attorneys, in their depositions, claim that they, or either of them, in any manner, were discharged from their obligations as attorneys of Perry by his act or consent.

Harper, having purchased the land while it was in the actual possession of Perry, has notice of all his rights and equities.

2. NOTICE: possession.

It is urged that, inasmuch as the land was conveyed to Francis Evans, Perry has no interest in it, and cannot claim the relief asked by him; that I. M. Preston is liable on his covenant of warranty to Mrs. Evans, and that, as she is not a party, no relief, based upon the covenant in the deed, can be given in this suit.

3. CONVEYANCE: covenants of warranty.

The deed having been executed to Mrs. Evans to secure an advance of money by her to Perry, her interest in the land is that of a mortgagee, and she holds the title in trust for Perry. Perry holds the equitable title, and can maintain this action to protect it. All the protection I. M. Preston can claim is, that the covenant of warranty in this deed be canceled. This may be voluntarily done by Mrs. Evans; if not, relief must be granted, as though I. M. Preston were bound by the warranty.

The actual consideration paid for the land to I. M. Preston was $681.67. The deed mentions the considera-

**4. —— consideration: actual amount may be shown.** tion at $500. It is claimed that no other sum can be shown to be the true consideration. But the consideration mentioned in the deed is only *prima facie* evidence of the amount paid. In an action upon the covenant of warranty in a deed, it is competent to show that the true consideration was greater than the amount named in the deed. *Lawton* v. *Buckingham, Ex'r*, 15 Iowa, 22. The amount paid for the land, including taxes paid upon the tract first bought and properly chargeable to I. M. Preston, was $681.67 — the purchase-price of the first tract bought being $500 — the second $100. Calculating interest upon the different payments to the day of the sale of the land, I. M. Preston's liability upon his warranty on that day was $771.95. The amount of the judgment and costs on the day of sale was $1,577.66. Other land covered by the judgment was sold for $225, leaving $1,352.66 against Perry's land. I. M. Preston must be charged the amount for which he is liable upon his warranty, viz.: $771.95, leaving $481.71 to be paid by Perry, with interest from the day of sale at six per cent per annum.

The sheriff's deed and the conveyance from J. H. Preston to Harper must be held void, and the title of the land declared to be in Perry, who shall, within ninety (90) days from the entry of the decree herein, procure and deliver to I. M. Preston a proper release from Frances Evans of the covenant of warranty in the deed to her for the land, and shall pay to J. H. Preston $481.71, with interest at six per cent, from September 28, 1867, being the difference between the amount for which the land sold, at sheriff's sale, and the consideration paid by Perry for the land, interest being calculated upon each sum. In case the release of the covenant of warranty is not obtained and delivered, he shall pay $1,352.66, with interest from September 28, 1867, at six per cent per annum,

the full amount of the sheriff's sale of the land. Proper judgment to be entered against Perry, to be enforced by execution.

J. H. Preston is required to cancel and deliver up to Harper the note or notes executed by him for the purchase of the land. The circumstances of the case, and the relation existing between I. M. Preston and J. H. Preston, will not permit, and does not require us to settle the transaction as between them, nor grant any relief to J. H. Preston for the money paid by him upon the sheriff's sale.

A decree will be entered in this court to conform with this opinion.

Reversed.

WRIGHT, J. — The foregoing opinion, it will be seen, charges I. M. Preston with the taxes upon the land first sold to Perry, delinquent at the time of such sale, or at least to the amount of $81.67; and this upon the assumption that the amount was paid by Perry, notwithstanding the agreement of Preston to pay the same. In a petition for rehearing, to which appellant, by his counsel, has responded, Preston admitting the agreement, maintains that the testimony establishes that *he* paid these taxes, or redeemed the land from the tax sale; and that, therefore, in this respect, the opinion mistakes the facts. We have thus been led to re-examine the testimony upon this one point.

So far from the certificates of redemption, found in the record, showing that Preston redeemed from the tax sale, they expressly state the redemption was by Perry, and the money paid by him. It is true that Perry had credit, under a special agreement, on one of the notes held by Preston for the purchase-money, for a certain sum ($28) paid by him for taxes, but that was over and above the

$81.69 which he paid for redemption. If he had been allowed the whole amount as credit, or if Preston had paid the taxes himself, of course Perry should not be allowed to recover the same in this action. Petitioners' view of the testimony is not warranted, however, and we hence adhere to the conclusion just announced, and direct that the former order of reversal stand in all respects undisturbed.