B. G. WALKER v. C. A. WALKER, Appellant, and Another Case.

Contracts: AGREEMENT TO SUPPORT: *Evidence.* Where a father, who has made advancement to his other children, gave to his son with whom he was then living, a deed of the land on which they lived, remarking that there was a deed of the property he intended for his son, and that he wanted to make his home with his son, as he had always lived there, and it seemed like home, and his son

replied that he was welcome, if he could put up with his son's manner of living, and, in response, the father said he guessed that would be all right, such statements amounted to an agreement to support, as consideration for the deed.

CONSIDERATION. A deed, the consideration of which is an agreement by the grantee to support the grantor during his life, may be set aside for breach of such agreement, notwithstanding that the only consideration expressed in the deed is love and affection and one dollar.

BREACH. An agreement by grantee to support the grantor, constituting the consideration for the conveyance, is broken by the grantee's denial of his obligation to support the grantor in pursuance thereof, although he offers, as a charity or filial duty, to allow the grantor to live with him during his life.

EXECUTION: *Lease.* A lease which has never been effectually executed is absolutely null *ab initio,* and the parties thereto must be left to adjust any claims arising from the occupancy of the land, without reference to the lease.

MEETING OF MINDS. A written lease will be set aside on the ground that the minds of the parties never met, where parts of the oral agreement were omitted, and the lease, having been signed, was delivered to the other party for inspection, by him to be recorded, if satisfactory, and he never recorded it.

SAME. A lease is not effectual as such, though signed by the lessor, where he signed it with the understanding that it would not be effective unless recorded, and under the impression that if it did not conform to the oral understanding of the parties he would destroy it, and he subsequently told the lessee that it did not contain their understanding, and he would never record it.

*Appeal from Decatur District Court.*—HON. W. H. TEDFORD, Judge.

WEDNESDAY, JANUARY 26, 1898.

THE plaintiff and defendant are father and son; the plaintiff being father. Two cases are consolidated for trial, and the parties (the plaintiff and defendant) are the same in each case. Prior to August 18, 1891, plaintiff was the owner of one hundred and ninety acres of land, and about that time he made to defendant a deed for one hundred and thirty acres, and to a daughter a deed for

sixty acres. As we gather from the record, there was one hundred and sixty acres in one tract, and thirty acres outlying. The deed to the defendant was of the east one hundred acres of the one hundred and sixty-acre tract, and the outlying thirty acres, and the deed to the daughter was of the west sixty acres of the one hundred and sixty-acre tract. The deed to each expressed, as a consideration, "love and affection, and one dollar." Each deed contained the following: "Reserving to myself the possession of said premises, and the use, rents, and profits thereof, during my natural life." On September 24, 1894, the plaintiff and defendant signed a written agreement or lease of all the land mentioned, to defendant, for "ninety-nine years, or during the life of party of the first part, commencing March first, 1895;" the party of the first part being the plaintiff. The annual rental to be paid for the use of the land was two hundred and twenty-five dollars, and the payment of taxes and assessments, and keeping the premises in repair. The lease also contained certain reservations to the plaintiff. The action entitled above is to set aside and annul the deed on the ground that the actual consideration therefor was the promise of the defendant to support and care for plaintiff during his natural life, and the petition shows a breach of the agreement. The other action is to set aside the lease, on the ground that it was obtained by fraud and collusion, and was never legally consummated. Issues were taken upon the petitions, and the causes, as consolidated, were tried; and the district court, as to the first action, adjudged the consideration for the deed to be a promise to support the plaintiff during his life, and sustained the deed, but gave plaintiff a judgment for one hundred and fifty-six dollars annually during life, and made the payment thereof a lien on the land deeded. It decreed the lease of no force and effect after March 1, 1896, and adjudged certain amounts to be due for support up to July 1, 1895,

and one hundred dollars due on the lease at the date of the judgment. The defendant appealed.—*Modified.*

*Marion F. Stookey* and *C. W. Hoffman* for appellant.

*V. R. McGinnis* and *Harvey & Parrish* for appellee.

GRANGER, J.—I. We will give the cases separate consideration. We should first determine the dispute as to the consideration for the deed. As we have said, on the face of the deed it was love and affection, and one dollar. The evidence bearing directly on this question is not extended, and the question is not difficult of solution. As to how the deed came to be made, the parties are in dispute; the plaintiff claiming that the defendant and his wife solicited the deed under promises to take care of him while he lived, and that he need not work. On the other hand, defendant says that the first he knew that the deed was made, or thought of its being made, was through the papers announcing the transfers of real estate, and that the deed came to him in an envelope a week or ten days after it was recorded, and denies explicitly any agreement whatever as to the support of plaintiff. At the time the case was tried the plaintiff was a man seventy-five years old, and he was about seventy when the deed was executed. The deed was made in August, 1891, and his wife had died the April previous. He had five children, of whom defendant was the youngest,—then some thirty-eight years old. Prior to August, 1891, when the deed was made, he had made advancements to his children other than the defendant and the daughter. The value of the property deeded to the daughter was about one thousand five hundred dollars, and that to defendant about six thousand dollars. Of course, these are estimates of

value. As we understand, the deeds to the defendant and the daughter were a practical closing out of plaintiff's property to his children, except the life estate reserved. After the death of his wife, in April, 1891, he lived with defendant, except when traveling or temporarily away, till about December, 1893. It was really his home. Defendant had long lived on the land as a renter prior to the execution of the deed. We now notice what, to us, is the controlling evidence as to the agreement to support the plaintiff. Plaintiff's evidence is directly to that effect. We may pass over some particulars as to which there is a conflict. The following is a brief extract from defendant's testimony: "There was no agreement, contract, or anything else made in regard to the land prior to the time the deed was made. After the deed had been made and delivered, he said something about living with us. He handed it to me, and said, 'There is a deed;' that was my portion of the property he intended for me; that he wanted to make his home with us; that he always lived there; and that it seemed more like home than any place else. And I told him he could, if he could put up with the way we done, or with what we had to eat." Defendant's wife was present when the deed was delivered, and the following is a part of her testimony: "When father gave the deed to Caleb, he handed it to him and said that was his part that he had deeded to him, and he says, 'I want you to farm this place as long as I live, and I also want to stay here, and make my home here with you.' My husband said he was welcome to, if he could put up with the way we done. My father-in-law replied, and said he guessed that would be all right; that we had always set a good table, and he guessed he could live if we did." Both also testified that nothing was said about clothing or boarding him as a consideration for the land. There are other facts favorable to our conclusion, but, without

doubt, we think plaintiff understood, in delivering the deed, that he was providing for a home; and we also think that defendant so understood, or, at least, should have. Under date of February 15, after the deed was made, the defendant, in a letter to a brother and sister, in which he was stating what disposition his father had made of the property, and what had been deeded to him, and that some of them wanted him to give up a part, said: "I don't think that we have got any too much, and have got to take care of him." Later in the same letter, as we understand, referring to the property deeded: "We don't know how much will be left. It might take it all for doctor bills before he dies, for all we know. He holds the place as long as he lives." The situation, to us, is conclusive that the actual consideration for the deed was, in part, his support while he lived. This construction harmonizes with the testimony of both parties, and with fair dealing. With the contract settled as to the obligation for support, we need not give extended consideration to the question of its breach, for it is practically conceded. The district court filed in the case an opinion in which the facts are quite minutely found and considered. The court found a breach of the agreement on the part of defendant and his wife, as to their treatment of the plaintiff, that we are unable to concur in, as to some particulars. There is evidence showing neglect in some particulars, but we think most of the matters as to which plaintiff complains resulted from the change he was compelled to experience in losing his former home, and taking another, in which other methods and practices obtained, and with his age, and want of adaptability, he was led to regard as ill treatment or neglect things that, under other conditions, he would not. His complaints reach to matters of privilege about the house; to the way he was spoken to and looked at. Harshness in word or deed is nowhere claimed. The district court speaks of it as

"the smooth, velvet stroke of indifference, ingeniously exercised, in a way more cruel and exasperating than blows." The district court saw and heard the witnesses. They are not before us. The record, as presented here, does not justify such a conclusion. With every concession against defendant, warranted by the record, as to the treatment of plaintiff, we do not escape the conclusion that much of which plaintiff complains is of matters to have been anticipated in the change he was compelled to make as a result of his family misfortune. His age may have unfitted him to duly appreciate the loss he must sustain as to those little matters that make one's home different and better to him than all other places. He did not have his former home. It was not to be expected. In December, 1893, plaintiff again married, since which he has resided in another house on the place, but has not been supported by defendant. This act on his part was not satisfactory to the defendant. With it established that the consideration for the deed was the agreement to support the plaintiff, there is a clear breach of the agreement, in the denial of the obligation by defendant, and his continued refusal to so support him in pursuance of the agreement since it was made. It is true that plaintiff did live with defendant up to about December, 1893, just prior to his marriage; and it is also true that defendant now says that he is welcome to come and live with him during his life, but not to bring his wife. The offer is not made in fulfillment of his duty under the agreement, but as charity or filial duty. If this deed is to be sustained without other relief, the situation is this: That the plaintiff must accept a mere proffered support, while it may be granted, or forfeit the legal right to support that he has under the agreement to deed the land. No claim is made, or would be, that he should do that. While we have spoken of the consideration for the deed being the promise of support, it should not

be understood that such was the only inducement in making it. It was undoubtedly the intention that a part of the grant should be as defendant's share of the estate; that is, plaintiff intended the land to be equal to defendant's share, and his support. The district court declined to set aside the deed, and, to secure plaintiff's support, gave judgment for one hundred and fifty-six dollars per year, being an allowance of $3 per week, and adjusted some other matters. Of this the plaintiff does not complain, and we do not understand appellant to, as between such a judgment and one setting aside the deed. That a deed, the consideration of which is an agreement for such support, may be set aside where a different consideration is expressed in the deed, see *Gardner v. Lightfoot*, 71 Iowa, 577; *Saville v. Chalmers*, 76 Iowa, 325; *Puttman v. Haltey*, 24 Iowa, 425; *Harper v. Perry*, 28 Iowa, 57. We conclude that the action of the court, in its conclusion and judgment on this branch of the case, is fully authorized.

II. As we have said, the lease executed September 24, 1894, of the land conveyed in the deed, and also the sixty acres deeded to the daughter, with the one hundred-acre tract deeded to defendant, make a quarter section of land, which had constituted the home of the plaintiff. It will be remembered that the plaintiff, after the making of the deeds to defendant and his sister, had, by the terms of the deeds, a life estate in this quarter section. And he signed the lease in question for ninety-nine years, or during his life, at an annual rental of two hundred and twenty-five dollars; the defendant to pay taxes and keep the place in repair. It is now asked that the lease be set aside, for the reason that it does not contain the entire contract of the parties; that there is omitted therefrom the right of plaintiff to remove and occupy certain buildings, and to take wood therefrom; and

that the term of the lease was to be for one year, or to
continue from year to year, to be terminated by notice.
It is also averred that there was no such agreement of
minds as that the lease became valid. It is averred that
these defects as to the lease were caused by the fraud
of the defendant; and the district court so found, and set
aside the lease. It is conceded by the defendant, in his
answer that some matters were omitted from the
written lease by mistake. This action was commenced
in January after the lease was made, in September. The
plaintiff and defendant went to Van Wert, and the
lease was written by one Pearl Hall. It was signed and
acknowledged before Hall, as a notary public. After
it was completed it was handed to plaintiff, as he says,
to take it and read it, and he says that he was told by
Hall that it was of no account if not recorded; and,
while the thought is not clearly expressed, we
understand the plaintiff to mean this: That he
signed the lease and took it for examination, and,
if he put it on record, it would be valid, and, if not, it
would not be; that, if not satisfactory (that is, accord-
ing to the agreement), he could destroy it. He said in
his testimony: "When the contract was written, he
handed it to me, and told me to take it and read it. He
told me that if the contract was not put on record, that
it would be of no account; that it wouldn't stand in
law. I looked at it, and thought, if that was the case,
I could sign it and take it home, and, if it didn't suit me,
I could stick it in the fire and burn it." He further
stated that afterwards defendant asked him if he had
the lease recorded, and he told him he had not, and
never would record it; that it did not contain half that
was agreed upon. It appears from defendant's testi-
mony, that the next morning after the lease was written
and signed, he had a talk with plaintiff, in which plain-
tiff was objecting to the lease as written, and that he
(defendant) told him that, as to the omitted parts, he

would perform as if they were included; that the lease was to run for but one year. In the preparation of the lease there was a wide departure from the agreement of the parties. It appears that it was thought that it would take too much paper to write it all out. It is strange that ninety-nine years, or during life, should be put in the lease, when, as defendant says, it should run but one year. Certain it is that, when plaintiff took the lease from the office of Hall, he had not agreed to it, and defendant did not think he had. Defendant's evidence, in effect, corroborates plaintiff's as to that; for, when told of its omissions, he did not then claim the lease to contain what it should. It is true, defendant testifies that the omissions were by plaintiff's assent, but in his answer he states that they were omitted by oversight. He also denies, in his answer, that the lease was to run from year to year, and avers that it was to be during the lifetime of the plaintiff, while in his testimony he says that he said to plaintiff, after the lease was written, that it was for but one year. We need not pass directly on the question of fraud. The petition pleaded the facts as to the agreement, that parts thereof were omitted from the written lease, that it was signed and delivered to plaintiff for inspection, and that there was never any binding contract between the parties, as the minds of the parties never met on any common ground. We think that claim has full suppport in the evidence. It is to be said that this written lease was never agreed to. Certainly it had not been when taken from Hall's office, and both parties then understood that it was subject to further examination, and to be placed of record if found correct. It was not found correct, and never afterwards assented to. Plaintiff expressly refused to place it of record, because not in accord with the agreement. There has never been a moment that it met the assent of both parties, nor has it been

delivered, or treated as binding. It is true that this disposition of the question is not in line with the argument, but it is in line with the pleadings, and with the facts, without practical dispute. The district court annulled the lease, but gave it validity to March 1, 1896, and gave judgment for rentals for the year 1895. We think that the lease should be absolutely annulled, and the parties left to adjust any claims arising from the occupancy of the land as their rights may be in view of such a judgment. Thus MODIFIED, the decree of the district court will stand AFFIRMED.