PARLEY SHELDON, Administrator et al., Appellees, v. EDWARD A. CRANE ET AL., Appellants.

**Landlord and tenant:** LEASE: VALIDITY: FAILURE OF PARTIES TO AGREE. Where a lessee prepared and signed a lease leaving it with a third party to be presented to and signed by the lessor, but before signing several additional conditions were inserted at the direction of the lessor, one of which was not called to the attention of the lessee, the lease was void because not embodying the mutual agreement of the parties.

**Same:** WAIVER OF INVALIDITY. Where one party to a lease repudiates a provision inserted in the instrument by the order of the other party without his knowledge or consent, the rights under the lease are terminated; and he can not, after the death of the other party, affect their rights by a waiver of objection to such provision.

**Conveyances:** WHEN NOT EXPRESSIVE OF MUTUAL INTENT: EVIDENCE. In this action plaintiff's intestate executed a lease of certain lands to defendant, and also a deed to the same premises to defendant's wife containing the provision that the same was subject to a life lease of the premises back to the grantor, but the life lease was never executed. *Held*, to show that the executed lease and deed were not fully expressive, of their mutual intent.

**Reformation of instruments.** There can be no reformation of an instrument with respect to matters upon which the parties themselves never reached an agreement, but the instrument is a nullity although the parties mistakenly supposed it was enforcible.

**Deeds:** DELIVERY. Delivery of a deed is a question of intent; and in the instant case the evidence is held to show that the grantor never surrendered possession of the instrument, although keeping the same in a place to which the grantee had access.

**Hearsay evidence.** The evidence of a witness as to delivery of a deed based on statements of another is not admissible.

**Deeds:** DELIVERY: EVIDENCE. Evidence held to show that the grantor never intentionally parted with the possession of the deed in question, and that grantor and grantee did not contemplate immediate delivery.

**Same:** RESCISSION. An agreement that a deed shall not become effective by delivery until the happening of a certain condition will not relieve the grantor from the obligation of delivery as agreed, but rather tends to give an executory character to the transaction, and upon failure of the condition will authorize termination or rescission of the contract.

**Same:** ADMISSIONS: PLEADINGS. The fact that the original petition in an action to cancel a deed alleges delivery of the instrument, while a circumstance against plaintiff is not controlling, where by an amendment during the trial to conform to the proof nondelivery is alleged.

**Evidence:** CREDIBILITY. The fact that the testimony of a party is inconsistent with his pleadings does not necessarily lessen the credibility of the evidence.

**Deeds:** FAILURE OF CONSIDERATION: RESCISSION: EVIDENCE. Where the circumstances governing a delay in the delivery of a deed are such as to render the contract executory, and there is failure of performance on the part of the grantee, the grantor may rescind. In the instant case the evidence is held to support a rescission because of failure of the grantee to care for and provide for the grantor.

**Same:** *Status quo.* Where inability to put a party *in statu quo* will result to his advantage, he is in no position to complain on that ground.

**Conveyances:** CONSIDERATION: RATIFICATION: ESTOPPEL. Where the defendant in an action to cancel a deed to his wife, given in consideration for support of the grantor, and also a lease of the same premises to himself, upon the death of his wife abandoned all efforts to perform any further obligation to the grantor and voluntarily removed from the premises in question, jointly occupied by them, he was in no position to plead a ratification of the deed and lease by reason of the fact that plaintiff had allowed him to make improvements upon the premises.

*Appeal from Story District Court.*—HON. W. D. EVANS, Judge.

TUESDAY, MARCH 15, 1910.

THIS is a suit in equity to set aside a certain deed and lease purporting to have been executed in March, 1905. There was a decree granting the relief prayed, and the defendants appeal.—*Affirmed.*

*Hume & Hamilton,* for appellants.

*Stevens & Fry* and *J. Y. Luke,* for appellees.

WEAVER, J.—The petition in this case was filed in March, 1906. The original plaintiff was Mrs. Eastwood-Latham. She was formerly Mrs. Eastwood, a widow, and later became Mrs. Latham by her marriage with John Latham. She is referred to in this record by the witnesses by both names indiscriminately. At the time of the execution of the papers in controversy she was Mrs. Eastwood. It will, perhaps, be more convenient in our recital of the facts up to that point if we refer to her as Mrs. Eastwood. For the most part, however, we shall find it more convenient to refer to her as the "plaintiff."

In January, 1907, and before the case was brought to trial, the plaintiff died, and her administrator and heirs at law were duly substituted. The defendants are her son-in-law, Edward A. Crane, and her grandson, Merle Crane. The transaction complained of was entered into between the plaintiff on the one hand, and her son-in-law, Edward Crane, and his wife, Jenny Crane, who was the daughter of the plaintiff, on the other. Mrs. Crane died on February 12, 1906, after the commencement of the suit, but before the filing of the petition. Prior to the transaction complained of, which occurred in March, 1905, the plaintiff was the owner of a farm of sixty acres near the town of Ames. On this farm was situated a good house, in which she made her home, and where she lived alone. She was the widow of Asa Eastwood, who had died a few years before, and the farm in question was the share of his estate set apart to her, and included the homestead of herself and former husband. Some litigation resulted, over the settlement of the husbands estate, over a claim of the older son that he was to have the home farm, subject to a life estate to his mother. In this litigation the mother and her only daughter, Mrs. Crane, joined in resisting the claim of the son. This litigation was finally terminated by an opinion handed down by this court in November, 1904, which was adverse to the claim of the son. Mrs. Crane lived upon her own farm, a gift from the father, some miles distant. Mrs. Crane's family consisted of her husband, Edward Crane, and an only child, Merle Crane, who are the two defendants herein. It was Mrs. Eastwood's desire that her property should go to her daughter after her death, in case the daughter survived her. Otherwise, she desired that it should go to her grandson, Merle Crane.

Immediately following the termination of the litigation referred to, she made a will to that effect, which latter was revoked, some time after the transaction complained

of in this case was had.  Negotiations were had between
the mother and her daughter and son-in-law, whereby it
was proposed that they should move into her home, and
that she should make her home with them.  In those ne-
gotiations the mother seems to have maintained the pur-
pose of retaining her dominion over the property as long
as she should live.  On the part of the daughter and son-
in-law there seems to have been a purpose to secure to
themselves an irrevocable title and control over the prop-
erty forthwith.  In March, 1905, the defendant, Edward
Crane, prepared a lease, a copy of which will hereinafter
be set out, and signed the same, and left it with Mr.
Greeley, a banker at Ames, with the statement that Mrs.
Eastwood would be in later to sign the same.  Later Mr.
and Mrs. Crane and Mrs. Eastwood came together to
Greeley's bank, and asked Mr. Greeley to prepare a deed
for execution by Mrs. Eastwood.  Greeley declined to
prepare such deed, but recommended that they go to a
lawyer, and they went to see Mr. Underwood and requested
that he prepare the same, which he declined to do.  That
fact was reported to Greeley, and nothing further was
done on that day.  On a subsequent day Mrs. Eastwood
and Mrs. Crane returned to Greeley's bank, and requested
again that he prepare a deed.  This request he complied
with on that day, and prepared a deed, a copy of which
is hereinafter set forth, and the same was executed by
Mrs. Eastwood, but there was no apparent delivery thereof
at that time.  At the same time Greeley produced the
lease which had been left by Crane, and read the same
over to Mrs. Eastwood.  It was not satisfactory in form,
and Mr. Greeley inserted therein two additional provisos,
and Mrs. Eastwood thereupon signed the same.  The lease
as so altered and signed by Mrs. Eastwood was left in
the hands of Greeley, and he was to obtain Crane's ap-
proval of the alterations, or at least he was to submit
the lease to him in the altered form.  The deed is found

in this record as Exhibit A and the lease as Exhibit B, and they are as follows:

## Exhibit A.

Know all men by these presents, that Susan M. East-wood, widow, of Story County, state of Iowa, in consideration of one dollar in hand paid by Mary Jane Crane of Story County, state of Iowa, do hereby sell and convey unto the said Mary Jane Crane, the following described premises, situated in the county of Story, and the state of Iowa, to wit:

The east five-eighths (E. 5/8) of the west one-half (W. 1/2) of the southeast quarter (S. E. 1/4) of section five (5) and the north (N.) ten acres of the east five-eighths (E. 5/8) of the west one-half (W. 1/2) of the northeast one-fourth (N. E. 1/4) of section eight (8) all in township eighty-three (83) north range twenty-four (24) west of the 5th P. M., Iowa, containing sixty (60) acres.

*This deed is given subject to a lease this day made which is a life lease to first party,* and I hereby covenant with the said Mary Jane Crane that I hold said premises by good and perfect title, that I have good right and lawful authority to sell and convey the same, that they are free and clear of all liens and incumbrances whatsoever and I covenant to warrant and defend said premises against the lawful claims of all persons whomsoever and the said widow relinquishes her right of dower in and to the above described premises.

Signed this 31st day of March, 1905.

                                        Susan M. Eastwood.

(Duly acknowledged.)

## Exhibit B.

### Agreement of Lease.

This day made between (1) S. M. Eastwood of the county of Story, in the state of Iowa, of the first part, and (2) E. A. Crane of the county of Story, in the state of Iowa, of the second part, witnesseth: That the said party of the first part has this day rented to the said party

of the second part the following described premises, situated in the county of Story, in the state of Iowa, for the term of her natural life, sixty acres of land situated in the following manner: The east ⅞ of the west ½ of the S. E. quarter of sec. 5, and the north 10 acres of the east ⅝ of the west ½ of the northeast quarter of section 8—all in Twp. 83-24, west of the 5th P. M. *First party is to have the right to occupy the house as her own. and to have all her support furnished by 2nd party during her life time,* on the following terms and conditions, to wit:

For the rent of said premises, the said party of the second part hereby agrees to pay to the said party of the first part one hundred dollars per annum in cash, as mentioned below, *and also first party is to have free access to the house and premises and to have her support furnished by second party free from charge. Second party to keep up all repairs free of charge.*

Said rental to be paid promptly as follows: On or before the first day of March, 1906, and yearly thereafter on March 1st. Second party shall have the right to build, improve or use the place in any way that he chooses, not detrimental to the same.

Said party of the second part agrees to take good care of the premises, and to commit no waste, and suffer no injury to be done to the same, and to return the possession of the same to said party, at the expiration of the term in as good condition as at the commencement of this lease (natural wear and tear, and unavoidable accidents excepted). The said party of the second part agrees to use the said premises for no other purposes than . . . and not to underlet the same, nor any part thereof to any other person without the written consent of said party of the first part had and obtained. This lease to commence on the last day of March, 1905, and continue during the lifetime of the first party.

A failure to pay the rent as agreed upon, or to comply with any of the stipulations of this lease by the said party of the second part, shall authorize the said party of the first part to consider the lease forfeited, and he may take possession of the premises without notice and without process of law, or he may bring action as allowed by law, to recover possession.

The said party of the first part shall have a lien for the rent at any time remaining unpaid upon any and all the property of said party of the second part used on said premises during the term, whether the same· is exempt from execution and attachment or not.

In witness whereof we have hereunto set our hands this 1st day of March, 1905.

> [Signed] Susan M. Eastwood, Landlord.
> E. A. Crane, Tenant.
> Mary Jane Crane.

We have italicized certain portions thereof for convenience of reference. The italicized portions of Exhibit B. represent the alterations or additions made by Greeley after the same had been signed by Crane, and before it was signed by Mrs. Eastwood. According to the testimony of Crane, his attention was never called to the first of said alterations, and he never assented thereto. Greeley is unable to contradict him in this respect. Crane's first knowledge of this alteration appears to have been had after trouble arose between the contracting parties, and he contended that such alteration was a forgery. The italicized portion of the deed refers to a life lease to be made to the first party, but no such life lease was ever in fact executed. The signing of the papers by Mrs. Eastwood occurred on March 31st. The Crane family, however, had already moved into her home in the course of the month. Whether the deed then executed was ever intentionally delivered is one of the questions in dispute. The testimony of Edward Crane is that his wife had the actual possession of the deed, and that she had it sewed up in the sleeve of her dress. Testimony on behalf of the plaintiff is that the deed was kept in Mrs. Eastwood's drawer, to which, however, both mother and daughter had access, and that the defendant Edward Crane, on May 11, 1905, took the deed without the consent of either mother and daughter, and carried it to the county seat

. . . .

and filed it for record. Both mother and daughter having died before the trial, we are without the aid of testimony from either of them.

At the time of the transactions already narrated, Mrs. Eastwood was contemplating marriage with John Latham, which fact was known to the daughter and son-in-law. This contemplated marriage was consummated on April 26th following, after an antenuptial contract had been entered into by the parties to the marriage. After the marriage, the plaintiff and her husband sat at the table of the defendant for about ten days. After that time they undertook a little light housekeeping in their own room upstairs, and the defendants did not thereafter contribute to the support of either. Active hostilities seem to have begun about the time of the filing of the deed for record, and the relations of the plaintiff and her husband on the one hand, and her son-in-law on the other, became quite unendurable. We are impressed from the record that the conduct of the defendant Edward Crane particularly was defiant and domineering, and without an element of conciliation or kindly consideration. As illustrative, it may be noted that he accused his mother-in-law of stealing apples from the orchard and of stealing silverware and chickens. These accusations were repeated by him to other people indiscriminately. The basis of such accusations was that the plaintiff and her husband had gathered a few apples for their use, and to that extent had lessened the number which the defendant's pigs were otherwise gathering. In the latter part of 1905, when it had become fully evident that peace was impossible, the plaintiff sought to terminate the joint occupancy. Being confronted with the claim of ownership and dominion by her son-in-law, she employed counsel. The evidence is very voluminous, and it will be impossible to set it forth even in substance within the proper limits

of an opinion. The plaintiff based her claim to relief upon the following grounds, as set forth in appellees' brief:

(1) The purported deed and lease were obtained through fraud and undue influence exercised by Ed Crane and his wife over Mrs. Latham. (2) Mrs. Latham, at the time of signing the purported deed and lease, was incapable of understanding or appreciating the effect of these instruments, and was mentally incapable of making such contracts or protecting her interest therein. (3) The purported deed and lease in question did not embody any agreement or understanding that had ever been made between the parties thereto. In other words, there was no meeting of the minds of the parties as to the terms and conditions contained in the purported deed and lease, and they are therefore null and void. (4) The purported deed never became effective for the reason that there was no valid delivery of the same to the defendants Crane, or either of them. (5) The principal consideration of the purported deed and lease, assuming that they were otherwise valid was that the plaintiff was to be supported and maintained by the defendants Crane, and was to have their personal, kind, and considerate care and attention during the lifetime of Mrs. Latham, and the defendants were to treat her husband, if she remarried, at all times with consideration and respect. This the defendants failed and refused to do. This breach of the agreement on their part entitled Mrs. Latham to have the purported deed and lease rescinded and her property restored. (6) The contract, if legal one there was, was executory. The deed was not to be delivered or take effect only in case Mrs. Crane survived her mother, and then only on the condition that defendants Ed Crane and Jenny Crane had fully performed their obligations to support and care for Mrs. Eastwood under the said lease and contract. The defendants having failed and refused to comply with the terms of the said contract and agreement, in reference to support, maintenance, and kind treatment, Mrs. Latham in the lifetime of herself rescinded the said contract and lease, and was within her legal right in so doing.

The defendants pleaded a general denial and ratification, and that an adequate consideration was given. John Latham filed a petition of intervention in the case, claiming a homestead right during life in the premises. The finding of the trial court was adverse to him, and he has not appealed. As already indicated, the court below found for the plaintiff, and granted relief. The trial judge filed a written opinion, which is a succinct discussion of certain phases of the case, and we incorporate it herewith as follows:

I incline to the opinion that under the evidence the deed, Exhibit A, and the lease, Exhibit B, should be regarded as parts of the same transaction. I do not find it necessary to pass definitely on this question, because I arrive at the same result whether I consider Exhibit A as an independent transaction, or as part of the same transaction with Exhibit B. Regarding both instruments as parts of one transaction we are confronted with the fact, practically undisputed, that the lease, Exhibit B, involves a miscarriage as to the identity or mutuality of agreement between the parties. The parties did not in fact sign the same contract, nor did either one knowingly assent to the contract in the form in which the other signed it.

The lease was originally prepared by the defendant Ed Crane, and signed by him in the form in which he prepared it. In that form he left it with Greeley to be signed by Mrs. Eastwood. She did not accede to the terms of the lease as it then stood. Thereupon Greeley inserted two additional paragraphs, and in this altered form she signed it. Greeley was to obtain the consent of Ed Crane to the alteration. He did call Crane's attention to one of the paragraphs, and obtained his acquiescence thereto. Through some oversight he failed to call his attention to the other paragraph, nor did Crane assent to it. He so testifies now. The minds of the parties, therefore, never met. They never in fact reached an agreement, although upon the face of the paper they appear to

1. LANDLORD AND TENANT: lease: validity: failure of parties to agree.

have done so. I see no escape from the conclusion that upon this ground alone both the deed and the lease, as parts of the same transaction, must be declared a nullity. *Carey v. Gunnison*, 65 Iowa, 702; *Walker v. Walker*, 104 Iowa, 505.

It is said in argument, on behalf of defendants, that the defendant Crane does not take any exception to the paragraph contained in the lease to which he has not as-

2. SAME: waiver of invalidity.

sented, and that he waives any objections that he might have made thereto. If no other questions were involved than that of the liability of the said defendant under the terms of said lease, he could, of course, waive his right in that respect. He did not waive it when it was first brought to his attention in the lifetime of Mrs. Eastwood. He expressly refused to assent to it, the paragraph, and was within his rights in so doing. But the status of the parties, and the force and effect of the contract, were thereby determined. He can not now change the rights of the parties by changing his own position.

There is another incompleteness apparent upon the face of these papers, indicating that the deed and lease fall short of expressing the mutual intention of the par-

3. CONVEYANCES: when not expressive of evidence: mutual intent.

ties. The deed contains a clause to the effect that it is 'given subject to a lease this day made which is a life lease to the first party.' It is quite manifest from this clause that it was the intention of the parties that Mrs. Eastwood should receive back a life lease of the premises purported to be conveyed by the deed. What other provisions or conditions such life lease should include is not indicated by such clause. No such life lease was in fact ever made. In the absence of the execution of such life lease the deed, Exhibit A, and the lease, Exhibit B, both executed by Mrs. Eastwood, are quite inconsistent with each other. Although the lease bears date March 1st, and the deed bears date March 31, they were in fact both executed by Mrs. Eastwood at the same time. If the deed were to be regarded as a separate transaction, and to take effect first, then Mrs. Eastwood had nothing left which she could lease. If the lease should be deemed as a separate transaction, and prior in time to the deed, then her

covenant or warranty in the deed was broken as soon as made. If the deed were not to be delivered during the lifetime of Mrs. Eastwood, that would dispense with the necessity of a life lease, and would render the lease, Exhibit B, consistent with the undelivered deed. If the failure to make such life lease to the first party was intelligent and intentional, then the plausible explanation of such omission is that the necessity for such life lease was superseded by Mrs. Eastwood withholding the deed from delivery. The only other explanation possible under the evidence is that the parties became lost in a maze of confusion, and did not clearly comprehend what papers were necessary to be executed, nor the effect of those that they did execute.

Of course the failure of the parties to execute a life lease would not necessarily be fatal to the validity of the papers that were executed; such omission could be supplied by a decree of court upon proper proofs of what the agreement in that respect was, if in fact any agreement was reached. But the failure of the parties to agree upon the conditions to be incorporated in Exhibit B is beyond the power of the court of equity to cure by reformation or otherwise. The parties themselves having failed to reach an agreement originally, there was no contract, even though both of them mistakenly supposed there was. In such case the only possible reformation of a written contract is that it be decreed a nullity.

4. REFORMATION OF INSTRUMENTS.

It is argued on behalf of the plaintiffs that the deed, Exhibit A, was never in fact delivered, but was held in the possession and control of Mrs. Eastwood, with the intention on her part to deliver the same at some future time, presumably just before her death. Delivery, of course, is a question of intent. The intent to deliver is often and usually inferred when possession by the grantee is shown. It is quite manifest from the evidence as a whole that neither Mrs. Eastwood nor Mrs. Crane intended that this deed should be recorded. That Mrs. Crane had access to the deed, and had had the same in her hands, may fairly be assumed from the testimony. But the testimony tends strongly to show also that Mrs. Eastwood had not surrendered the control of

5. DEEDS: delivery.

the deed, and that it was kept in a drawer in the house, to which both she and her daughter had access.

It is claimed by the witness Ed Crane that his wife had exclusive possession of the deed, and that it was sewed up in the sleeve of her "plum-colored dress." This
6. HEARSAY EVI-    statement of the witness has no corrobora-
      DENCE.       tion in the appearance of the deed. The wit-
ness bases his claim of knowledge as to the identity of the paper inclosed in the sleeve upon statements of his wife concerning it. The evidence, therefore, is inadmissible.

The circumstance of the taking of the deed by Ed Crane for the purpose of recording was related by Mrs. Crane to her mother in the presence of the witness Latham, who has testified to the same. This is the most satisfactory evidence there is in the record as to the place and manner in which the deed was kept. It is not to be supposed that the mother and daughter dealt with each other in any technical way, or that they were conscious of the rising of legal presumption whenever the hands of one or the other was laid upon the deed. The actual intent of the thing is to be ascertained, if it can be done, from the evidence.

The theory that the deed was to remain in the control of the mother during her life, and was to be delivered to the daughter at the time of her death, establishes
7. DEEDS:       a consistency between the lease, Exhibit B,
   delivery.    and the deed as drawn. It would also render unnecessary the execution by Mrs. Crane to her mother of the life lease referred to in the deed, and it would explain the omission to make the same. This is a very strong circumstance in its favor. I think, on the whole that the fair conclusion to be drawn from all the evidence is that Mrs. Eastwood never intentionally parted with her control of the deed, and that up to the morning of May 11, 1905, it was contained in a drawer in the house to which both she and her daughter had free access. I am convinced, also, that on that morning it was taken by the defendant Ed Crane wrongfully and wantonly, and without the knowledge or consent of Mrs. Eastwood. This act on his part was high-handed and oppressive, and a flagrant breach of his obligation under the contract, if

contract there was. This act on his part destroyed the peace of mind and confidence of his mother-in-law, while it gave to Crane himself a sense of security which removed from him the last motive to any pretense of kindness.

The mere finding, however, that the deed in question was not delivered is not of itself fatal to defendants. If the deed was executed as a part of the same transaction 8. SAME: re- or contract as Exhibit B, the obligation to scission. deliver it some time would be as binding upon the grantor as a delivered deed, though in a different manner. An agreement or understanding that the deed should not go into effect by delivery until after the expiration of the lease, Exhibit B, would not relieve the grantor from the obligation of putting it into effect at that time. She could not arbitrarily destroy or rescind it without legal cause. To my mind the principal importance of the fact of nondelivery in such case is that it gave executory character to that part of the contract, and the grantor could terminate or rescind it on the failure of the other party to perform the condition which constituted the consideration to her for the proposed transfer. On the other hand, if the deed is to be regarded as a separate transaction, distinct from Exhibit B, then upon its face it was a gift. It had no effect until delivered, nor does it imply any contractual obligation. In such case, it was the gift of substantially all of grantor's property, and this fact would furnish an additional circumstance in favor of the theory of nondelivery.

There is evidence tending to show that Mrs. Eastwood intended this deed to perform a testamentary function. And this is so whether it be regarded as a separate transaction, or as part of the same transaction with Exhibit B. If the latter, she was proposing to part with much more in value than she was to receive. If the former, she was receiving no consideration. The claim put forth by the defendants that the consideration for the deed was the payment of certain attorney's fees by Mrs. Crane is not proved. Of course, the intent of Mrs. Eastwood could not modify the legal effect of a delivered deed. But it may be a proper circumstance to be considered in determining the question whether the deed was delivered.

On this question I do not overlook the fact that the original petition alleged execution and delivery, and that the amendment alleging nondelivery· was made during the trial. That fact is entitled to its proper consideration as against the plaintiff. But it is not a circumstance of controlling importance. The petition was signed by the attorneys alone. It is not unusual for attorneys to prepare pleadings before ascertaining all the facts. Few important cases are tried without vital amendment of pleading during the trial.

9. SAME: admissions in pleadings.

The fact that testimony given in behalf of a party is inconsistent with or contrary to his pleadings does not necessarily lessen the credibility of such testimony. Indeed, such circumstances may have the contrary effect. Willing witnesses sometimes strain their testimony to conform to the allegations of the pleadings. True, testimony obeys no call. When it is spoken, the pleadings must do the conforming. In this case the evidence on this point is partly circumstantial. The most important circumstances are practically undisputed. These circumstances are supplemented by the testimony of John Latham. His testimony on this point was, so to speak, spontaneous. It was not invited by the allegations of the pleading. The fact, then, that it necessitated an amendment during the trial is a circumstance tending more to support its credibility than to impeach it.

10. EVIDENCE: credibility.

·If Exhibits A and B could be regarded as a valid and complete contract, this would not save· the defendants. If they are to be regarded as an executed contract, there was a substantial failure of the consideration to Mrs. Eastwood, without fault on her part. If the contract is to be regarded as executory, there was a substantial failure of performance on the part of Mr. and Mrs. Crane. As already indicated, I am of the opinion that the contract is executory, and that the failure of performance on the part of Mr. and Mrs. Crane gave to Mrs. Eastwood ample ground for rescission. The moral blame for this failure of performance must rest primarily upon the defendant Ed Crane rather than upon his wife.

11. DEEDS: failure of consideration: rescission: evidence.

I am impressed from this testimony as a whole that, if he could have permitted the mother and daughter to deal together in their own way, without interference from him, no serious dispute would probably have arisen between them. It is manifest from the evidence that Mrs. Crane was rendered quite helpless to perform her obligations to her mother by the domination and interference of her husband, and quite against her own wish.

The manner and demeanor of this defendant upon the witness stand made an unfavorable impression upon the court. In spite of the instructions of his counsel, and the constant admonition of the court, he testified repeatedly and persistently to alleged personal transactions between himself and his wife, and between himself and Mrs. Eastwood. With manifest knowledge of the rule of evidence forbidding him to testify to such personal transactions, he also testified to several alleged conversations between his wife and her mother, had in his presence and in which he took no part. He is of a nervous, active temperament, and some allowance should be made to him on this account. But the testimony as a whole, and his demeanor upon the witness stand, discloses a keen-minded, intelligent, resolute, unsympathetic, strong-willed, and uncandid person. I do not feel justified in accepting his uncorroborated testimony as to important facts without great scrutiny. It is difficult to believe that he could have listened to the alleged conversations between his wife and her mother without taking part therein. His personality is at least a partial explanation of the failure of the plan of mother and daughter to spend their last days in affectionate companionship and care of each other.

It is claimed on behalf of the defendant that there has been such part performance of the contract that the parties can not be put *in statu quo*. This position is not tenable. Mrs. Eastwood boarded at the Crane table a very brief time. She received during her lifetime $100 of rent. The undisputed evidence of the case is that the land rent alone, exclusive of any improvements, was worth $4 per acre, and that the use of the house alone, was, without the land, worth $20 per month. Charging the Cranes nothing for the use of the house during the year which they occupied it, they had

12. SAME: *status quo.*

the use of the land for two years, of a rental value of
$480. The failure, therefore, to put the parties *in statu
quo* would operate greatly to their disadvantage, and they
are in no position to complain on that ground.

It is also contended by defendants that the Cranes
built valuable improvements upon the premises with the
knowledge and acquiescence of Mrs. Eastwood, and that
she thereby ratified her lease and deed, and
cured whatever infirmity originally inhered
in them. To this position there are two or
three answers. In the first place, she did
not know until the beginning of the year
1906 that Crane had never assented to the paragraph in-
serted in the lease by Greeley at the time she signed it.
In the second place, the breach of obligation on the part
of Ed Crane was as flagrant after making the improve-
ments as before. The virulence of his conduct never di-
minished. The fact that he could privately and publicly,
in the fall of that year, accuse his mother-in-law of steal-
ing apples from the orchard would be incredible did he
not testify to it himself. In the third place, it is a grave
question whether the death of Mrs. Crane did not so
change the situation as to make impossible the perform-
ance of the substance of the consideration moving to Mrs.
Eastwood, even if there had been no friction whatever
between the parties prior to that time. This, of course,
on the theory that the contract was executory. In any
event, after the death of Mrs. Crane in January, 1906,
the defendant Ed Crane moved out of the house, and made
no further effort to perform any service for Mrs. East-
wood. It is true that a notice to quit had been served
upon him prior to such removal, but the notice to quit
required him to surrender the whole premises, and not the
house alone. He maintained his possession of the ground
and raised a crop thereon. It can not, therefore, be said
that he yielded the premises in obedience to the demands
of the notice served upon him. He voluntarily abandoned
all effort to perform any further obligation to his mother-
in-law. The plea of ratification therefore can not avail.
*Patterson v. Patterson,* 81 Iowa, 626. . . . .

The foregoing conclusions render it unnecessary for
me to pass specifically upon the question of alleged fraud,

13. CONVEYANCES:
consideration:
ratification:
estoppel.

undue influence, and mental incapacity. To my mind, the general result arrived at is equitable under all the evidence. The case is unique in some respects, and has presented abundant difficulty to the court; and it has been tried and argued with signal ability and industry by counsel on both sides. There will be a decree setting aside the deed and the lease, and charging each party with benefits received according to their value as shown by the evidence. The plaintiffs offer in their written arguments that the defendants be allowed the value of the improvements made upon the premises in 1905, and such allowances will be made, and the value thereof is fixed at $600. As against this the defendant will be charged with the value of the use of the land (exclusive of the house and its appurtenances) at the rate of $240 per year since January 1, 1906, for such length of time as they shall have used the same. If they shall have used the house and appurtenances, the amount to be charged against them for such use to be hereafter determined at the time of final accounting. Jurisdiction is reserved for the purpose of an accounting after the termination of the litigation in other respects. If an appeal be perfected to the Supreme Court, the accounting will be deferred until the final determination of the case on the appeal, and the accounting will be had in accord with such final determination. I have some doubt whether the defendant Ed Crane should not be charged with the use of the premises for the year 1905. While the evidence shows the value of the land to be $4 per acre, and the house to be $20 per month, still there is no evidence on the question of the value of the use of the house jointly with Mrs. Eastwood, nor of the value of the board of Mrs. Eastwood during the time she boarded with the Cranes. The evidence does show that Crane paid her $100 for that year. Nothing additional, therefore, will be charged to Crane for the occupation of the premises for the year 1905.

Let the formal decree be prepared in harmony with the foregoing opinion. The costs will be taxed to defendants, except that no costs will be allowed to intervener John Latham, and the costs upon the issue tendered by his petition will be taxed to him.

It will be noted from the foregoing that the court below did not pass upon the question of fraud or undue influence because the other questions were deemed decisive of the case. Much of the evidence in the record and the argument of counsel is directed to that question. After a careful examination of the record, we agree with the conclusions of the trial judge on those phases of the case which are discussed in the foregoing opinion. We see no escape from the conclusion that the minds of the parties never met as to the contents of the lease, Exhibit B, and that in so far as the deed, Exhibit A, can be deemed to have any contractual effect, it was essentially a part of the same transaction with Exhibit B. We reach the conclusion also from all the evidence that the mother and daughter did not contemplate an immediate delivery of the deed. On no other theory can the provisions of the deed and the lease be harmonized. In so far as the execution of this undelivered deed could be deemed a part of an executory contract, supported by mutual considerations and binding as such, the fact that the minds of the parties never met upon the same provisions was of itself fatal to it. And if it were not, the conduct of the defendants amounted to such a breach of performance on their part as to entitle the plaintiff to a rescission. We are satisfied with the conclusion of the trial judge upon this question as indicated in the above opinion, and it is necessarily decisive of the case. We have no occasion, therefore, to go into the question of fraud and undue influence. The provisions of the decree entered below fully protect the defendant so far as placing them *in statu quo* is concerned.

It follows that the decree must stand, and it is therefore *affirmed.*