WARREN WRIGHT, a minor, by J. S. Wright, his next friend, Appellant, v. WALT. B. MAHAFFA and BERNARD MAHAFFA, Appellees; MARION R. McCAULLEY, Guardian ad litem for Bernard Mahaffa, a minor.

No. 43577.

DECEMBER 15, 1936.

REHEARING DENIED APRIL 9, 1937.

S. A. Frick and D. M. Kelleher, for appellant.

Jacobs & McCaulley and Salinger, Reynolds & Myers, for appellees.

KINTZINGER, J.—On June 24, 1934, plaintiff, a minor, sixteen years of age, was riding as a guest in an automobile owned by the defendant, Walt. B. Mahaffa, and operated by his son, Bernard Mahaffa, on a good graveled public highway running east and west in Elm Grove Township, Calhoun County, Iowa. The road was in good condition and about 18 feet wide, with a downgrade toward a railroad track and depression in the road at the foot of the grade. The road was straight, with a downgrade for a distance of over 1500 feet east of the place where the car swerved off the highway.

There is evidence in the record from which the jury could find that the car as it was proceeding down the hill was traveling at a speed of about 75 miles an hour, and weaving from one side of the road to the other, until it reached a point about 148 feet from a railroad crossing, where the automobile finally swerved off the graveled road and left the highway, running into a ditch on the east side of the railroad track, and across the railroad track, where the car upset and rolled over two or three times before stopping.

One of the witnesses who saw this accident said:

"The rate of speed the car was going, * * * was about 75 miles an hour. * * * The car did not appear to travel straight along the road, it would keep weaving * * * from side to side."

This witness testified that she was positive the speed of the car was never retarded while it was traveling more than a quarter of a mile to the place of the accident. She also testified the car turned over two or three times as it crossed the railroad track.

The evidence also shows that the automobile was owned by the defendant, Walt. B. Mahaffa, and was driven with his consent by his son, Bernard Mahaffa.

As a result of the accident, plaintiff received severe bodily injuries resulting in a permanent fracture of his spinal column, or a broken back.

The plaintiff, on cross-examination, admitted having signed the following unsworn statement, being Exhibits 11 and 11-A, after the accident, and while he was in bed suffering from a broken back.

" * * * Aug. 15, 1934, * * * I am 16 years and senior in High School. On June 24, 1934, I went out to Geo. Souder's farm for dinner. Bernard Mahaffa was * * * there for dinner also. * * * about 2:30 P. M. we started for a sand pit down by Yetter to swim. We got in Bernard's car and he drove. I was sitting in the front seat and the three Souder boys were in the back seat. When he had gone about 4 miles we met with an accident. At the time of the accident, we were going west about 45 to 50 miles per hour. This is an ordinary gravel road in good condition. We were approaching a railroad crossing with about a four or five foot raise. When we got about 100 feet from the railroad crossing the car started to swerve across the road and went into on the right hand side before we crossed the track but stopped on this side of the track. I do not know what caused the car to swerve. I did not notice any holes in the road and I do not know whether Bernard applied the brakes or not. I did not see any other cars around. The car had not skidded at any time prior to the accident. There was nothing that I know of that interfered with Bernard's driving. It just seemed to me that the car started to swerve and Bernard lost control of it. * * * We had been driving between 45 and 50 miles per hour most of the way. * * * No one made any complaints about the way Bernard was driving and no one said to slow down or speed up. No tires blew out to my knowledge. There were no witnesses to the accident that I know of outside the occupants of the car. I was knocked unconscious and the last I remember was when I went into the ditch. I have read this report and it is true. Warren Wright."

The plaintiff testified that *he never read the statement,* but that a stranger came to their house while he was ill in bed and read it to him, *but he didn't know whether it was read the way it is now written.*

Just prior to the accident, plaintiff was sitting in the front

seat with the driver, and three other boys were sitting in the rear seat. While the car was proceeding downhill, the plaintiff was turned around in his seat talking with the boys in the rear seat. He testifies to no estimate of the speed at which the car was going, and said he didn't observe the road ahead or the speedometer because he was talking to the boys in the rear seat. The foregoing is in effect the substance of the testimony offered.

At the close of the evidence, the defendants moved for a directed verdict on substantially the following grounds:

1. Because the evidence fails to show that the car was operated recklessly within the meaning of the statute.

2. Because by the unexplained statements contained in Exhibits 11 and 11-A, plaintiff was precluded from proving recklessness by other evidence. This motion was sustained and plaintiff appeals.

I. The first question for consideration, excluding the admission for the present, is whether or not there was sufficient evidence to warrant a jury in finding that defendants' driver was guilty of recklessness.

What constitutes recklessness for which a defendant may be liable for injuries sustained by another was fully discussed, with an exhaustive review of the authorities thereon, in the cases of Siesseger v. Puth, 213 Iowa 164, 239 N. W. 46; McQuillen v. Meyers, 213 Iowa 1366, 1367, 241 N. W. 442; Siesseger v. Puth, 216 Iowa 916, 248 N. W. 352; and the following cases which are hereby referred to for a further discussion upon that subject: Neessen v. Armstrong, 213 Iowa 378, 239 N. W. 56; Shenkle v. Mains, 216 Iowa 1324, 247 N. W. 635; Fleming v. Thornton, 217 Iowa 183, 251 N. W. 158; Stanbery v. Johnson, 218 Iowa 160, 254 N. W. 303; Wright v. What Cheer Clay Prod. Co., 221 Iowa 1292, 267 N. W. 92.

In Siesseger v. Puth, 213 Iowa 164, loc. cit. 182, 239 N. W. 46, 54, this court said:

"It is apparent * * * that the legislature intended the word 'reckless' * * * to mean 'proceeding without heed of or concern for consequences.' To be 'reckless,' one must be more than 'negligent.' Recklessness may include 'wilfulness' or 'wantonness,' but if the conduct is more than negligent, it may be 'reckless' without being 'wilful' or 'wanton,' but to be reckless in contemplation of the statute under consideration, one must be more than

negligent. Recklessness implies 'no care, coupled with disregard for consequences.' ''

The term recklessness as announced in the foregoing cases can be said to be construed as meaning something more than negligence or want of reasonable care; that it means proceeding without heed of or concern for consequences; that it may include wilfulness or wantonness, but if the conduct is more than negligent, it may be reckless without being wilful or wanton; recklessness implies no care, coupled with disregard for consequences, and in the operation of an automobile signifies the driving of a car in a heedless disregard for consequences. The acts must be such as to manifest a heedless disregard for, or indifference to, the rights of others; something that indicates an indifference to consequences; and in the operation of an automobile signifies the driving of the car in heedless disregard for consequences.

■■■ Can we say, as a matter of law, that a car is not driven heedlessly and without care of the consequences to others, where it is driven downhill on a gravel road towards a railroad track at a speed of 75 miles an hour, swerving from one side to the other, for a distance of a quarter of a mile, and finally leaving the road, running into a ditch, and turning over two or three times before it finally stopped?

An important consideration in determining the question of recklessness is that the defendants' driver was not faced with any sudden emergency. There were no obstructions between his car and the place where he swerved off the road that would in any manner divert his attention. He was approaching a railroad track and a depression at the foot of the hill for a distance of a quarter of a mile upon a straight gravel road, traveling on a downhill grade. If the defendants' driver was traveling down this hill on a gravel road with his automobile swerving from one side to the other for a distance of a quarter of a mile, in the middle of the afternoon, with a clear view ahead, at a speed of 75 miles an hour, in such a manner that his car, after weaving from side to side, left the roadway, it can hardly be said that there was no evidence tending to establish recklessness on his part.

A further discussion of this question in a somewhat similar case is found in Siesseger v. Puth, 216 Iowa 916, 248 N. W. 352, to which reference is hereby made. In the latter case we held that under facts almost identical with the facts disclosed in this

case, the question of recklessness was properly submitted to the jury.

It is contended that speed alone cannot constitute recklessness. While this may be true, it can hardly be said that speed under any and all circumstances cannot become recklessness. A speed of 75 miles or more an hour, on a broad concrete pavement, might not in itself constitute negligence, but we can hardly say, as a matter of law, that a speed of 75 miles an hour on a gravel road, with the car approaching a railroad crossing and operated in such a manner as to make it weave from one side of the road to the other for a distance of over 1500 feet, might not constitute recklessness.

In Siesseger v. Puth, 216 Iowa 916, loc. cit. 923, 248 N. W. 352, 356, we said:

"The true rule seems to be, that * * * if from such evidence all minds could not reasonably agree on whether recklessness has been established or not, then that question should be submitted to the jury. In most * * * cases relied on by defendant as supporting the rule contended for, it was found by the court, as a matter of law, that there was not sufficient evidence offered to make out a prima facie case. Under such condition it would naturally be the court's duty to direct a verdict. But if under the proven or admitted facts different minds might reasonably reach different conclusions, the question then is one of fact for the determination of the jury. [Citing cases.]"

It is the rule that for the purpose of a ruling on a motion for a directed verdict, the testimony should be viewed in the light of the evidence most favorable to appellant, If, therefore, from the evidence introduced, all minds could not reasonably agree on whether or not recklessness has been established, that question became one for the jury.

Our ruling upon this question is controlled by the ruling in Siesseger v. Puth, 216 Iowa 916, 248 N. W. 352, and under it we are constrained to hold that the facts presented in this case made the question of recklessness one for the jury; unless it can be said, as a matter of law, that the statements contained in Exhibits 11 and 11-A preclude the plaintiff from proving recklessness by other evidence.

■■ II. Appellant contends that the court erred in holding that plaintiff was precluded by the statements contained in Ex-

hibits 11 and 11-A from proving that defendants' driver was guilty of recklessness by other evidence. It may be the rule of law that a party is bound by his own admissions made on the witness stand in the case on trial, as to the existence of certain facts, but appellant contends that "out of court" admissions, such as the statements contained in Exhibits 11 and 11-A, do not have the same force and effect of admissions *of fact* made upon the witness stand. Appellant in this case did not admit upon the witness stand that the statements contained in said Exhibits *were true*. He simply admitted signing the statement, after it was read over to him, but says he did not know that the statements were the same as those contained therein now. Such an admission can in no manner be construed into an admission that the facts alleged therein are true. Such a statement can only be used by appellees for the purpose of discrediting plaintiff's claim. In other words, it is the well settled rule of law in this and other states that an admission made by a party "out of court" is simply evidence contrary to his claim in court, but is not conclusive against him.

The effect of the admissions is different from what it would have been had the plaintiff testified to the same facts on the stand in this case; the statements in this case were simply admissible for the purpose of discrediting his testimony and for such purpose only. Castner v. Railroad Co., 126 Iowa 581, 102 N. W. 499; Hallowell v. McLaughlin Bros., 136 Iowa 279, 111 N. W. 428; Coldren Land Co. v. Royal, 140 Iowa 381, 118 N. W. 426; Sheldon v. Crane, 146 Iowa 461, 125 N. W. 238; 2 Wigmore on Evidence (2d Ed.) sections 1051, 1053, 1057, 1058, and 1059; 22 Corpus Juris, 417-420, 422, 423, and 426.

In Castner v. Railroad Co., 126 Iowa 581, loc. cit. 583, 102 N. W. 499, 500, this court said:

"The oral demands and the letter were not, of course, conclusive on plaintiff as to the amount of his damage, and did not estop him from showing a larger amount of actual loss; but they were admissible as tending to contradict the truthfulness of the claims made in his testimony on the stand."

In Hallowell v. McLaughlin Bros., 136 Iowa 279, loc. cit. 283, 111 N. W. 428, 430, this court said:

"The appellees also contend that the appellants are bound

by the allegations of their original petition; but we do not think their position sound. After much of the evidence had been introduced, as we have heretofore said, the first four counts of the petition were withdrawn, and, while the allegations therein may still have been used as evidence contradicting the subsequent claim of the plaintiffs that oral warranties had been made, such allegations were not conclusive, and did not act as an estoppel upon the plaintiffs.''

In Coldren Land Co. v. Royal, 140 Iowa 381, loc. cit. 383, 118 N. W. 426, 427, this court said:

''At some date previous to the trial they had all been examined in certain proceedings supplemental to execution. * * * the plaintiff called the shorthand reporter, and she was permitted to read into this record the testimony of each defendant at that time. This evidence was all properly admitted, but its effect for the purpose of this case is quite different from what it would have been if each had testified to the same effect as a witness in this case. The former testimony of each defendant was admissible against him in this case as an admission, and as such only.''

Of similar import is the ruling in Sheldon v. Crane, 146 Iowa 461, loc. cit. 476, 125 N. W. 238.

This rule is stated in Wigmore on Evidence (2d Ed.), section 1053, as follows:

''A primary use and effect of an admission is to discredit a party's claim by exhibiting * * * inconsistent other utterances. It is therefore immaterial whether these other utterances would have been independently receivable as the testimony of a qualified witness. It is their inconsistency with the party's present claim that gives them logical force.''

''A quasi-admission, of the present sort, being nothing but an item of evidence, is therefore not in any sense final or conclusive. The opponent, whose utterance it is, may none the less proceed with his proof in denial of its correctness; it is merely an inconsistency which discredits, in a greater or less degree, his present claim and his other evidence.'' Wigmore on Evidence (2d Ed.), section 1059.

''An admission *in testimony* of a party is binding on him and dispenses with the necessity of proving the fact admitted, but is not, *as a matter of law,* to be taken as conclusively true,

and, where it is in the nature *of an estimate or guess,* may be overcome by evidence of the facts and circumstances which form the basis of admission. (Italics ours.)

"An admission in a deposition taken before trial has been held not to conclude the deponent on the trial." 22 Corpus Juris, 422-423; State v. Rice Co. Dist. Court, 134 Minn. 324, 159 N. W. 755; Culberson v. Chicago, etc., R. Co., 50 Mo. App. 556.

"The ultimate determination as to the weight of an admission is for the jury, who should consider the nature of the statement and the circumstances under which it was made." 22 Corpus Juris, 426; Smith v. Randolph, 159 Iowa 159, 140 N. W. 411; Francis v. Francis, 180 Iowa 1191, 162 N. W. 839.

Appellees rely upon Stearns v. Railway, 166 Iowa 566, 148 N. W. 128, and other cases, as supporting their contention that appellant is conclusively precluded from contradicting by other evidence the statements made in the purported admissions contained in Exhibits 11 and 11-A, but in those cases, plaintiff *gave certain testimony on the witness stand in the action on trial,* and because he stated certain matters in his testimony as true, the court held he was bound thereby. Such is not the situation in the case on trial, and the rule therein does not apply here.

The admissions contained in Exhibits 11 and 11-A at most can be considered only "out of court" admissions, and can be considered for no other purpose. Such statements were not admitted to be true by plaintiff in this case. They were introduced by defendant on plaintiff's cross examination, who admitted no more than that the statements were signed, but he did not admit, on the trial of this case, that such statements were true. Such statements were, therefore, no more than an "out of court" admission.

During the time the car was weaving down this road before it left the highway, plaintiff was turned around in the front seat talking to the boys in the rear seat. The statement does not show that he was paying any attention to the speed of the car, and if he did make any statement as to such speed, it could at best be considered only an opinion and not a fact. A party cannot be bound by statements out of court when such statements are the mere opinion of the party making them. Culberson v. Chicago, etc., R. Co., 50 Mo. App. 556; Rowe v. United Rys. Co., 211 Mo. App. 526, 247 S. W. 443.

In the latter case, the court said, loc. cit. 445:

"In a case such as we have before us, the testimony of plaintiff, as a witness in his own behalf, *as to the speed of the street car and the distance it was away from him at a given moment* are but mere expressions of his opinion and mere conclusions on his part, and not statements of fact, and, being opinion evidence, does not come within the rule * * * relied upon by appellant." (Italics ours.)

It is our conclusion that the lower court erred in excluding all other evidence bearing on the question of recklessness in sustaining defendants' motion for a directed verdict.

For the reasons hereinabove expressed, we are constrained to hold that the evidence offered presents a question for the jury, upon the question of whether or not the defendants' driver was reckless in the operation of the automobile at the time and place in question.

It necessarily follows that the judgment of the lower court must be and is hereby reversed.—Reversed.

PARSONS, C. J., and ALBERT, STIGER, ANDERSON, RICHARDS, HAMILTON, DONEGAN, and MITCHELL, JJ., concur.