SYLVIA RICH ECHTERNACHT, Appellant, v. PETER M. HERNY, Appellee.

No. 44093.

OCTOBER 26, 1937.

REHEARING DENIED MARCH 12, 1938.

318

Putnam, Putnam, Fillmore & Putnam and Korf & Korf, for appellee.

Cross & Hamill and Ralph N. Lynch, for appellant.

DONEGAN, J.—This case was before this court on a former appeal, the opinion appearing in 222 Iowa 465, 269 N. W. 489. That appeal was by the defendant from a judgment on a verdict in favor of the plaintiff, and resulted in a reversal in this court. Upon a retrial of the case the trial court directed a verdict in favor of the defendant at the close of all the evidence, and the plaintiff appeals.

This case grows out of a collision between an automobile in which the plaintiff was riding and an automobile driven by the defendant, in which the plaintiff sustained personal injuries. This collision occurred about 5:30 on the evening of November 17, 1934, upon U. S. paved highway No. 163, about a mile east of the east city limits of the city of Des Moines, Iowa. At the place of the accident there is a descent in grade toward the west, and at the time of the accident four automobiles were in the vicinity thereof. Two of these automobiles were traveling in a westerly direction and two of them in an easterly direction. The plaintiff was riding as a guest in one of these cars, which was owned and driven by one McDermott. The car in which plaintiff was riding was going down the grade to the westward and was preceded by a car driven by one Godfroy. The defendant was driving his car eastward and was preceded by another car which did not stop at the place of the accident, and the driver and description of this car are unknown.

As the first westbound car came over the brow of the hill or rise, a short distance east of the accident, and was proceeding on the down grade westward, Godfroy, the driver thereof, slowed down and turned his car southwesterly preparatory to crossing the south half of the pavement onto a gravelled road or street which ran southwesterly therefrom. After Godfroy's car had changed its direction toward the southwest and when the left front part thereof was at or near the center line of the pavement, a collision occurred between this car and the car driven by the defendant, as a result of which the defendant temporarily lost control of his car, which, after traveling a short distance eastward, veered off to the northeast and struck the car in which the plaintiff was riding. McDermott, the driver of

the car in which plaintiff was riding, testified that, when he got over the crest of the hill, he saw two cars coming from the west; that the first of these cars was crowding the center of the road and the second car was directly behind and about seven or eight feet distant therefrom; that he slowed down and got as far over to the shoulder as he could without getting off the pavement; that, when he was forty or fifty feet from the place of the accident, he saw the second eastbound car coming diagonally across the road; and that he cramped his steering wheel to the shoulder and stepped on the brake and was almost to a stop when the collision occurred. It seems to be undisputed that, when the defendant's car collided with the McDermott car, both front wheels and the right rear wheel of the McDermott car were on the shoulder on the north side of the pavement.

It was the contention of the plaintiff on the former trial of the case, as well as upon the retrial thereof, that the accident and resulting injuries to the plaintiff were caused by the negligence of the defendant in driving his car to the north or left of the center line of the paved highway and into contact with the Godfroy car, thereby causing the collision between defendant's car and the McDermott car, in which plaintiff was riding. Upon the prior appeal this court reversed the judgment of the district court because there was not sufficient evidence from which a jury could be allowed to find that the car of the defendant was, at any time prior to its contact with the Godfroy car, on the north of the center line of the paved highway. The evidence on the former trial, upon which plaintiff relied to show that the defendant's car had encroached upon the north half of the pavement where it collided with the Godfroy car, consisted of the testimony of a passenger in the Godfroy car that the contact between the Godfroy car and the defendant's car took place either on or south of the black line, and the testimony of McDermott, the driver of the car in which plaintiff was riding, that, after the accident, the Godfroy car was standing with its front wheels exactly in the center of the pavement. We held that this evidence was not sufficient to allow a jury to find therefrom, that the collision of defendant's car with the Godfroy car occurred because the defendant's car was to the north of or beyond the center of the pavement, and that, in the absence of sufficient evidence to support such a finding, there was no evidence that any negligence on the part of the defendant was the

proximate cause of the collision of defendant's car with the Mc-Dermott car and the injuries sustained by the plaintiff.

■ ■ ■ On the retrial of the case in the district court the evidence as to the facts and circumstances connected with the accident was practically the same as in the prior trial, with the exception that the witness, Godfroy, who had not testified as a witness in chief on the former trial, testified on the retrial to facts and circumstances which were not shown by his former testimony. On the retrial of the case, the testimony of the witness, Godfroy, as shown by the record, is as follows:

"As I approached E. 46th Street on Highway No. 163, I slowed down and came to a stop about where I wanted to turn, almost directly north of the west edge of the entrance to E. 46th Street. I turned my wheels a little bit to the left, put my car in second gear, put my foot on the clutch and brake and was waiting for the car from the west to go by. It had its headlights lighted and its left wheel was right on the center of the pavement, coming right down the center of the pavement.

"Just as this eastbound car started to pass me, another car swung out from behind it—swung out and over onto the north side and swung right back in again. When it swung back, the left rear fender of that car caught the left front part of my bumper and left front fender and left front wheel.

"When this collision occurred, my car was a foot or so north of the center line of the pavement stopped dead. It was Dr. Herny's car which collided with me. At the time of this collision, the left rear part of his car was on the north side of the center line and on my side. I was not moving at that time."

This testimony presented the direct evidence of an eyewitness that the collision between the Godfroy car and the defendant's car was caused by the defendant's car going beyond and to the north of the center of the pavement and there coming into collision with Godfroy's car when it was on its own right side of the road.

The defendant-appellee contends that this testimony of Godfroy is still too indefinite as to the exact point at which the collision occurred between the witness' car and the car of the defendant, because the witness merely said, "When this collision occurred my car was a foot or so north of the center line of the pavement stopped dead. It was Dr. Herny's car which collided with me." It is contended by the appellee that the state-

ment of the witness, that his car was a foot or so north of the center line of the pavement, is insufficient, because it does not say that all of his car was a foot or so north of the center line of the pavement, and because, under this testimony, some part of the car could extend beyond the center line of the pavement. This argument seems to us somewhat hypercritical and more ingenious than convincing. Even if the testimony of this witness be confined to the two quoted sentences thereof to which appellee's argument is directed, we think the common and ordinary meaning of the language used would be that it referred to the whole car and not to a part thereof. When the portion of this witness' testimony thus attacked by appellee is considered along with and in the light of the other testimony given by him, we entertain no doubt whatever that, if believed by the jury, it was sufficient upon which to base a finding that the defendant's car did come into collision with the Godfroy car on the north half of the pavement.

The appellee contends, however, that the effect of this testimony given by the witness, Godfroy, is conclusively negatived both by the physical facts and by other statements of the witness himself. It is argued that, under physical laws, ''Godfroy got himself into the position of testifying that the rear end would swing further than the front end, and in swinging, necessarily it would swing to the northeast, which would add to the natural tendency of the Godfroy car to bounce in a northerly direction upon the impact''; that the evidence shows that after the impact, when Godfroy's car came to rest, it was south of the black or center line of the pavement; and that this conclusively shows it must have been south of the middle line of the pavement when the contact occurred, because otherwise the force of the collision would have driven it northeastward and to the north of the center line of the pavement. There is further testimony, however, on the part of Godfroy that, when he was preparing to make the turn to the southwest, he came to a full stop a foot or so north of the center of the pavement and was standing still when the collision with Herny's car occurred; that when he came to a stop he put his car into second gear with one foot on the clutch and the other on the brake; that, when the appellee's car struck the front end of his car, his feet slipped off the clutch and brake pedals and the car went forward a few feet and stopped, because one front wheel was smashed and it killed the motor. We do not think we can say, as a matter of law, that it

is a physical impossibility that the rear end of the Herny car could have swung around on the wet pavement and struck the front end of the Godfroy car which was north of the center line of the pavement, or that, because the Godfroy car came to rest after the accident with its front end south of the center line of the pavement, it is physically impossible that the collision could have happened in the manner testified to by this witness.

■■■ Appellee stresses the fact that, after the accident, mud and debris were found south of the center line of the pavement, and that, at that time, Godfroy pointed out the spot where this mud and debris were deposited as the place where the collision between his car and the Herny car occurred. He also argues that a statement and diagram of the accident made by Godfroy, when reporting the accident at the sheriff's office, clearly show that Godfroy then gave the place of the contact between his car and the appellee's car as being south of the center line of the pavement. As to the physical fact that the mud and debris were found after the accident to the south of the center line of the pavement, no evidence has been called to our attention which clearly and unmistakably identifies this mud and debris as having fallen from either the Godfroy car or the Herny car, and, even if such mud and debris did fall from the Godfroy car, it is not absolutely impossible that it may have been loosened by the jar of the collision and finally have fallen after the Godfroy car had gone over the center of the pavement under its own power, as claimed by appellant, and then suddenly stopped when the motor was killed. As to the statements contradictory of his testimony made by the witness, Godfroy, when pointing out the mud and debris on the south half of the pavement as the place where the accident occurred, and as to the statements and diagram made in the sheriff's office when reporting the accident, we do not think the court can say, as a matter of law, that these matters conclusively negative the testimony given by him on the trial of the case and preclude a jury from giving such testimony any consideration. As a matter of common experience, we think it may be said, that ordinarily a person who has been in an automobile accident is, for at least a short time thereafter, under some degree of stress and excitement, and to preclude such a person from testifying under oath in regard to facts and circumstances connected with such accident, because his testimony is contradictory of statements made by him while under the stress and excitement of the accident, does not comport with a

sense of justice or with the ancient and well established principle that the jury is the sole judge of the credibility of witnesses and of the weight to be given to their testimony.

Appellee quotes from and relies on the case of Peterson v. Phillips Coal Co., 175 Iowa 223, 231, 157 N. W. 194, 197, wherein it is said:

"We concede that the credibility of the witness and the weight and value of his testimony are matters for the jury alone; but on a motion for a new trial, if an examination of the record discloses that the verdict is explainable only on the theory that the jury gave credence to testimony which is enveloped in grave doubt or uncertainty which no amount of judicial charity can ignore, it is within the authority of the court in the interest of substantial justice to sustain the motion."

In the recent case of Wright v. Mahaffa, 222 Iowa 872, 270 N. W. 402, this court had under consideration the question as to whether the plaintiff was precluded by written statements made by him out of court, which, it was claimed, negatived the statements made by him as a witness upon the trial of the case. The opinion contains an exhaustive review of the decisions of this court and of courts of other jurisdictions on this question, and held that the trial court was in error in refusing to receive testimony of the plaintiff as a witness which was contradictory of written statements made by him out of court. We think the principles enunciated in Wright v. Mahaffa, supra, and the numerous cases therein cited are applicable to and controlling in the instant case.

■■■ . Further argument is made by appellee in regard to the nature of the damage done to defendant's car and the Godfroy car, which, it is claimed, conclusively shows that the testimony of Godfroy is contrary to the physical facts. While the evidence of physical facts in many cases is such that it cannot be questioned, we do not think that courts can go to the extent of determining, in a case such as this, that the results which followed the collision of the appellee's car with that of the witness, Godfroy, could not have been caused substantially in the manner and at the place as testified to by the witness, Godfroy. If there is any one thing which frequent experience with collisions between automobiles teaches, it is that there are so many elements entering into the physical results produced by such collisions that it is very seldom that a court can say, as a matter of law,

that a particular result was produced because a certain specific factor or factors constituted the cause.

We are constrained to hold that the evidence of the witness, Godfroy, in regard to the place and manner of the accident, presented a question for the jury as to the negligence of the appellee, and the trial court was in error in directing a verdict in favor of the defendant. The judgment appealed from is, therefore, reversed.—Reversed.

HAMILTON, C. J., and KINTZINGER, RICHARDS, STIGER, and SAGER, JJ., concur.